[Cite as *State v. Todd*, 2025-Ohio-1066.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,           :

                                No. 114349

    v.                            :

AZJAUN TODD,                            :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 27, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-689636-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph Lucchesi, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Azjaun Todd appeals his sentence, arguing that the trial court improperly allowed the mother of his shooting victim to speak at his sentencing hearing. Todd asks that we vacate his sentence and remand the case to the trial court for resentencing. Finding no error, we affirm.

## I. Facts and Procedural History

{¶ 2} This case stems from a shooting on February 20, 2024. The victim pulled into a gas station in Warrensville Heights, Ohio, and saw Todd, who was sitting in his car while pumping gas. Todd and the victim were known to each other and had a strained relationship. After a brief exchange of words, the victim began to drive away. Todd returned the gas nozzle to the pump and then followed the victim's vehicle. He ultimately shot at the vehicle multiple times. (Tr. 25, 47-48.) One bullet struck the victim in the "upper right back, shoulder blade area." (Tr. 25.) Another bullet traveled through the front window of a home. That bullet fell to the living room floor, causing property damage but no injuries. (Tr. 26.) Police first learned of the incident when they received a call reporting a male with a gunshot wound at South Pointe Hospital in Warrensville Heights. They observed the vehicle the victim had been driving, which contained some 13 bullet holes, with the rear window shattered. (Tr. 24-25.) Police recovered 23 shell casings in the area of the shooting, all of the same caliber. (Tr. 25-26.)

{¶ 3} On March 11, 2024, the Cuyahoga County Grand Jury returned an indictment charging Todd with two counts of felonious assault, one count of improperly discharging a firearm at or into a habitation, and one count of having weapons while under disability. Counts 1-3 were felonies of the first degree. Each of those counts also included one- and three-year firearm specifications, plus a five-year "drive-by shooting" specification.

**{¶ 4}** The parties entered into a plea agreement. On July 15, 2024, Todd pled guilty to amended Counts 1, 3, and 4 of the indictment (felonious assault causing serious physical harm, discharging a firearm into a habitation, and having weapons while under disability), along with the one-year firearm specification on Count 1. In accordance with the plea, Count 2, as well as the three- and five-year firearm specifications on Count 1, and all firearm specifications on Count 3, were dismissed by the State. (Tr. 15.)

**{¶ 5}** The trial court sentenced Todd on August 14, 2024. The victim was not present. The prosecutor represented to the court that "[t]he victim had been notified" of the sentencing hearing, and the trial court asked why the victim was not present. (Tr. 22, 24.) The prosecutor responded that the victim did not want to appear, but that "his mother wishes to be present, and she wishes to speak on his behalf, if allowed." (Tr. 24.)

**{¶ 6}** After laying out the basic facts of the case for the trial court, the prosecutor indicated he "would request that the Court hear from the victim's mother," stating that "she wishes to speak on, you know, what her son has gone through." The trial court responded: "Under Mar[s]y's Law she doesn't have a right to speak but I'll listen to her." (Tr. 27.) Todd objected, arguing that while "[t]he rules of evidence are very loose" at a sentencing hearing, "Mar[s]y's Law is in place," and that while "[t]he victim was notified for each and every hearing," he "has never appeared." (Tr. 29.) The trial court responded:

I'll permit his mother to testify, but I do take into account the fact that he has failed to appear on numerous occasions, and I recognize that that is a problem with the State's case, as well.

(Tr. 29-30.)

{¶ 7} The victim's mother then addressed the trial court. She noted that her husband had recently died, and that due to this incident she "could have been burying [her] son" as well, and her "only grandson could have been left fatherless." (Tr. 34.) She also commented on her son's injuries. The transcript does reflect that the victim's mother referenced some matters separate from the shooting charged in the indictment. For example, she stated that Todd had "made three attempts on [her] son's life," describing one incident in some detail. (Tr. 30-31.) As she became emotional and began to address her remarks to Todd himself, however, the trial court admonished her that her comments "need to be to me" and that the trial court was "not going to tolerate that in my courtroom." (Tr. 35.)

{¶ 8} Immediately thereafter, the trial court told her she had "about a minute" left and that she needed to "[w]rap it up, because I've been courteous enough to let you speak." (Tr. 35.) The victim's mother concluded her remarks by asking the court to "take into consideration that [Todd] needs to be . . . off the streets and think about what he's done, what lives he could have taken." (Tr. 36.)

{¶ 9} Defense counsel spoke with respect to mitigation, noting the "ongoing history between the families," and also noting that Todd accepted responsibility, was 25 years old, had graduated high school, and owned his own home. (Tr. 40.) Todd then gave his allocution, expressing remorse and referring to the shooting as an

"isolated incident." (Tr. 42.) He said, "[I]f the victim was here, and I know you're not supposed to look at them, but I would look at him in the eye and let him know that I'm sorry." (Tr. 42.)

{¶ 10} The trial court discussed the factors relevant to sentencing, noting, for example, issues raised in the presentence-investigation report, Todd's long criminal history, his expression of remorse, and the likelihood of recidivism. The trial court made no reference to the statement of the victim's mother. It imposed the following sentence: On Count 1, one year on the firearm specification to be served prior to and consecutive with an aggregate minimum sentence of seven years to ten and one-half years; on Count 3, seven years, concurrent with Counts 1 and 4. On Count 4, 12 months, concurrent with Counts 1 and 3. This appeal followed.

## II. Law and Analysis

{¶ 11} Todd presents one assignment of error:

> The trial court erred in accepting a victim impact statement from someone who was not a victim under Marsy's Law.

{¶ 12} Todd argues that by allowing the victim's mother to speak at sentencing, the trial court committed an error of law. He therefore urges us to apply a de novo standard of review, citing *State v. Mormile*, 2018-Ohio-4858, ¶ 17 (8th Dist.) ("We do not review errors of law under an abuse of discretion standard. Such errors are simply that, errors of law.").

{¶ 13} The State does not directly respond to Todd's statement of the standard of review, but its arguments turn on R.C. 2929.19(A), which provides that

in addition to the victim or the victim's representative, "'any other person with approval of the trial court[] may speak at the sentencing hearing.'" *State v. Pascale*, 2023-Ohio-2877, ¶ 18 (8th Dist.), quoting *State v. Stilson*, 2010-Ohio-607, ¶ 23 (7th Dist.). In *Pascale*, we held that "'[i]t is *within the trial court's discretion* to allow any other person/persons to speak at the hearing.'" (Emphasis added.) *Pascale* at ¶ 18, quoting *Stilson* at ¶ 23. As discussed below, we find that the trial court neither erred as a matter of law nor abused its discretion in permitting the victim's mother to speak at Todd's sentencing hearing.

{¶ 14} Todd focuses his argument on Marsy's Law, which amended the Ohio Constitution to establish certain rights of crime victims. Ohio Const., art. I, § 10a. "Marsy's Law became effective April 6, 2023." *State v. Kriwinsky*, 2024-Ohio-2690, ¶ 20 (8th Dist.). "R.C. Chapter 2930 was enacted in accordance with Marsy's Law." *State v. Malfregeot*, 2024-Ohio-257, ¶ 9 (8th Dist.). R.C. 2930.02(A)(1) allows a victim to designate a representative to assert their rights under Marsy's Law. R.C. 2930.02(D) provides that if "pursuant to division (A) of this section a victim's representative is to exercise the rights of a victim, the victim shall notify law enforcement and the prosecutor."

{¶ 15} Todd contends, and the State does not dispute, that there is nothing in the record indicating that the victim notified law enforcement or the prosecutor that he was designating his mother as his representative. Todd concedes, however, that the court explicitly acknowledged that the victim's mother did not have the right, under Marsy's Law, to speak on her son's behalf. (Tr. 27.)

{¶ 16} Todd focuses on the content of the victim's mother's statement and its purported effect on sentencing. As discussed above, the victim's mother spoke regarding Todd's other alleged attempts to take her son's life. She also discussed her son's injuries, the fact that her husband had recently died, and how her son's death would have left his child fatherless. In the concluding paragraphs of his brief, Todd writes:

> None of this was proper. First, even the trial court recognized that [the victim's mother] was not a representative of the victim, and thus did not have the right to present anything on his behalf. Second, much of what [the victim's mother] told the court had to do with supposed offenses with which Todd was not charged, and to which he had no prior notice or opportunity to respond. Finally, it would be one thing if the trial court indicated that, since [the victim's mother] was not a proper representative of the victim, the court would not take into consideration anything she said. The trial court did not do this, and it is obvious that [the victim's mother's] improper statements had an impact on the sentence Todd received.

(Appellant's brief at 7.)

{¶ 17} We return, however, to *Pascale*, where we held that R.C. 2929.19(A) permits nonvictims, with the court's approval, to address the trial court at sentencing. *Pascale*, 2023-Ohio-2877, at ¶ 18 (8th Dist.). Pascale had been charged with the abuse of her minor child. As in the present case, the parties reached a plea agreement, and the case was set for sentencing. At the sentencing hearing, the trial court permitted a representative of the Cuyahoga County Division of Children and Family Services ("CCDCFS") to address the court.

{¶ 18} Pascale claimed that the trial court erred by permitting the CCDCFS representative to speak at the hearing. In overruling this assignment of error, we

quoted R.C. 2929.19(A), which explicitly states that in addition to "the victim or the victim's representative in accordance with section 2930.14 of the Revised Code, . . . with the approval of the court, any other person may present information relevant to the imposition of sentence in the case." We held in *Pascale* that "'R.C. 2929.19 grants broad discretion to the trial court to consider any information relevant to the imposition of a sentence.'" *Pascale* at ¶ 19, quoting *State v. Franklin*, 2019-Ohio-3760, ¶ 31 (8th Dist.). As discussed above, we further held that "'[i]t is within the trial court's discretion to allow *any other person/persons* to speak at the hearing.'" (Emphasis added.) *Pascale* at ¶ 18, quoting *Stilson*, 2010-Ohio-607, at ¶ 23 (7th Dist.). We rejected Pascale's argument, finding that in permitting the CCDCFS representative to address the court, "the trial court was in compliance with R.C. 2929.19(A)." *Pascale* at ¶ 20.

{¶ 19} We further rejected Pascale's argument that she was unfairly prejudiced:

> Pascale also argues that she was prejudiced by [the CCDCFS representative's] statements and it resulted in her receiving the maximum sentence. The record reveals that the trial court considered the record, all oral statements, the presentence-investigation report, the mitigation report, the plea negotiations, and the victim-impact statements. . . . Pascale does not point to anything in the record, in isolation, that specifically prejudiced her because of [the CCDCFS representative's] statements. The trial court considered [the CCDCFS representative's] statements because they may have been relevant to the imposition of Pascale's sentence.

*Id*. at ¶ 20.

{¶ 20} In addition, the Sixth and Eleventh Districts have explicitly held that "[w]hile only one person may act as the victim's representative, R.C. 2930.02(A) does not limit the trial court's discretion regarding the number of people who may speak at the sentencing hearing." *State v. Harwell*, 2002-Ohio-4349, ¶ 7 (6th Dist.). *See also State v. Pattinson*, 2010-Ohio-5664, ¶ 16 (11th Dist.) (same); *State v. Bilicic*, 2018-Ohio-5377, ¶ 19 (11th Dist.) (same). This aligns with our holding in *Pascale*, where we stated that a trial court has the discretion to allow not just the victim, but "any other person/persons" to address the court at sentencing. *Pascale*, 2023-Ohio-2877, at ¶ 18 (8th Dist.).

{¶ 21} While Todd claims the trial court should have stated on the record that it would "not take into consideration anything [the victim's mother] said" because she "was not a proper representative of the victim," that argument is contrary to the law discussed above. Pursuant to R.C. 2929.19(A) and case law, the trial court had the discretion to allow the victim's mother to speak and to consider her remarks.

{¶ 22} Marsy's Law, which expanded the rights of crime victims in Ohio, did not circumscribe the trial court's discretion to hear statements from any individuals during sentencing. While the victim's mother was not her son's designated representative under R.C. 2930.02(A) — a fact the trial court noted on the record — Todd's argument improperly suggests that the expansion of victims' rights also functions as a limitation, i.e., that *only* victims or victims' designated representatives may speak at sentencing hearings. Todd offers no authority to

support this argument. If accepted, it would invert Marsy's Law and result in an expansion of defendants' rights rather than victims' rights.

{¶ 23} Furthermore, we find Todd's arguments with respect to the content of the victim's mother's statement unpersuasive. Like the defendant in *Pascale*, he points to nothing in the record, including the transcript, suggesting he suffered prejudice because of the victim's mother's statements. While the victim's mother alluded to uncharged alleged offenses, the trial court said nothing to indicate it gave those remarks any weight or consideration. Finally, contrary to Todd's suggestion, it is not "obvious that [the victim's mother's] improper statements had an impact on the sentence Todd received." The trial court explicitly noted that the victim's mother was not a designated representative, acknowledged that she did not have the right to speak, and even admonished her, more than once, during her statement. We agree with the State that in acknowledging that the victim's mother had no right to speak on her son's behalf under Marsy's Law, the trial court indicated it would give appropriate weight to her statements.

{¶ 24} As discussed above, after the trial court had admonished the victim's mother for addressing Todd directly, had warned her that she had "about a minute" left to speak, and had told her that she needed to "[w]rap it up, because I've been courteous enough to let you speak," (tr. 35), the trial court proceeded to sentencing. The transcript reflects that the trial court focused on the statutory factors relevant to sentencing, including the facts pertinent to the charges to which Todd pled, the presentence-investigation report, Todd's expression of remorse, his extensive

criminal history, and the likelihood of recidivism. It did not mention the victim's mother or her statements. On this record, we cannot find that the trial court erred as a matter of law or abused its discretion by permitting the victim's mother to speak or that Todd was prejudiced because of the victim's mother's statements. Todd's sole assignment of error is overruled.

**{¶ 25}** Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)