[Cite as *State v. McFarland*, 2026-Ohio-835.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                       No. 116073

    v. :

CHRISTOPHER MCFARLAND, :

    Defendant-Appellee. :

[Appeal by A.B., Alleged Victim]

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED, MODIFIED, AND REMANDED
**RELEASED AND JOURNALIZED:** March 12, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-696088-A

---

### *Appearances:*

Flowers & Grube, Louis E. Grube, and Michael J. Factor,
*for appellee* Christopher McFarland.

OAESV Legal Clinic and Stephanie B. Scalise, *for appellant* A.B.

SEAN C. GALLAGHER, J.:

{¶ 1} This cause came to be heard as an expedited appeal pursuant to R.C. 2930.19(A)(2)(b)(ii). The alleged victim ("victim" solely for the ease of discussion) in the underlying prosecution against Christopher McFarland for sexual offenses,

abduction, assault on a law enforcement officer, and resisting arrest charges, appeals the trial court's denial of her motion to quash two subpoenas issued to her personally and to her cell phone service provider in preparation for trial. McFarland sought the data from the victim's phone in defense of the claims asserted by the victim, who asserted privacy concerns arising under Marsy's Law as the basis to quash. For the following reasons, we affirm but modify the scope of the order, as conceded by McFarland's counsel, and remand for further proceedings.

{¶ 2} According to the victim, the charges relevant to the requested documentation stemmed from an alleged assault that occurred in the victim's home. The victim called her friend during a portion of the incident, some of which was recorded on home surveillance cameras the victim used to monitor pets. In preparation of the impending trial, then set for February 23, 2026, McFarland issued four subpoenas, two of which are the subject of this appeal. In one, McFarland requested phone records relating to the victim's phone number from her service provider for the year surrounding the date of the alleged incident. In the other, McFarland requested, from the victim, "all electronic devices capable of storing data, including but not limited to, internal and external hard drives, smartphones . . . tablets, USB drives, and/or computers used by [the victim] between September 1, 2024, and October 2, 2024, related to [the victim's phone number]" in order to confirm the dates and times of phone calls and videos that a detective originally downloaded to a storage drive.

{¶ 3} The victim, through counsel, objected to the subpoenas related to the phone-service provider's records and the production of the smartphone and other devices, or a full file extraction, based on relevancy of the information and citing privacy concerns. A hearing was conducted in which both the victim and McFarland appeared through counsel. McFarland cited *State v. Kriwinsky*, 2024-Ohio-2690 (8th Dist.), in which the panel held that the trial court did not abuse its discretion by ordering the full file system extraction of the victim's cellular device under R.C. 2930.071 and Ohio Const. art. I, § 10a ("Section 10a") because "the State will preserve the imaging from the phone and provide Kriwinsky with the limited data stated in the journal entry . . . ." *Id.* at ¶ 24. R.C. 2930.071 has since been repealed but once provided the procedure to subpoena records of or concerning a victim. There is no procedural mechanism replacing that former statute. At the hearing, McFarland clarified that he was only seeking the original file information from those produced by the victim in redacted formats and the files generated by any video or audio calls related to the victim's telephone number. To those ends, McFarland clarified that a complete image of the devices to obtain the forensically complete version of the files already submitted to the State would suffice. Despite that narrowed focus, the victim persisted with her objection to the subpoena in general, citing a victim's right to refuse discovery and claiming that none of the information was relevant or could not be discovered elsewhere.

{¶ 4} The trial court denied the motion to quash, and this interlocutory appeal followed under R.C. 2930.19(A)(2)(b)(i), which provides a victim the right

to immediately appeal a decision depriving the victim of any of victim's rights under Section 10a and under general Ohio law establishing that the denial of a motion to quash a third-party subpoena is a final appealable order. *See Godwin v. Facebook*, 2020-Ohio-4834, ¶ 11 (8th Dist.). Importantly, the victim appears to have abandoned any challenge to the trial court's decision overruling the motion to quash the subpoena propounded on the service provider to obtain their records related to the victim's telephone number. Our review is limited to the subpoena requesting the victim's digital devices connected to her telephone number.

{¶ 5} Under Section 10a(A)(6), a victim has the right to refuse an interview, deposition, or other discovery request made by the accused or a person acting on their behalf, except as otherwise authorized under Section 10 of Article I of the Ohio Constitution ("Section 10"), which guarantees an accused's right to appear and defend against a criminal indictment — rights that include compulsory process. *State v. Barker*, 2011-Ohio-4130, ¶ 15. Thus, the right being asserted by the victim to refuse to comply with a subpoena duces tecum is expressly subordinate to the rights of the accused to compel witnesses to produce evidence. The two rights are not in competition. The issue here is not about a defendant's right to discovery. It is about the defendant's right to compulsory process to seek production of evidence for trial. Section 10a gives a right to the victim to refuse discovery, but that does not apply when the defendant asserts his right to compel production of evidence; a right arising under Section 10.

**{¶ 6}** The right to compulsory process authorized under Section 10 "has been described as 'the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. . . . This right is a fundamental element of due process of law.'" *State v. Wolfe*, 2025-Ohio-866, ¶ 100 (2d Dist.), quoting *State v. Santibanez*, 2023-Ohio-3404, ¶ 13 (6th Dist.). The manner in which a defendant's Section 10 right to compulsory process is enforced is through R.C. 2945.45 (procedure to effectuate defendant's subpoena) and Crim.R. 17. *Id.*, *see also* R.C. 2930.072 ("The victim has the right to terminate the interview or deposition at any time or refuse to answer any question during the interview or deposition, unless the deposition has been ordered by the court."). "Crim.R. 17(C) provides that a subpoena may be used to command a person to produce documentary evidence" and that rule enforces the defendant's right to compulsory process established under Section 10. *State v. Farmer*, 2000 Ohio App. LEXIS 1541, at *25 (8th Dist. Apr. 6, 2000).

**{¶ 7}** It is the issuance of a subpoena duces tecum by the defendant that underlies this case.

**{¶ 8}** The dissent is correct to focus on the plain language of Section 10: that an "accused shall be allowed . . . to have compulsory process to procure the attendance of witnesses in his behalf[.]" The dissent's analysis, however, distinguishing a subpoena duces tecum (to appear to testify and produce evidence) from a subpoena (to appear and testify), is misplaced. It has long been held that the defendant's right to procure the attendance of "a witness" includes the right to have

that witness produce evidence.  "The right to compulsory process includes the right to secure papers — in addition to testimony — material to the defense."  *United States v. Hubbell*, 530 U.S. 27, 55 (2000) (Thomas, J., concurring), citing *United States v. Burr*, 25 F. Cas. 30, 34-35 (No. 14,692d) (CCD Va. 1807) ("Burr moved for the issuance of a subpoena duces tecum to obtain from President Jefferson" certain evidence and the government's objection, "arguing that compulsory process under the Sixth Amendment permits a defendant to secure a subpoena *ad testificandum*, but not a *subpoena duces tecum*" was overruled); *see also United States v. Nixon,* 418 U.S. 683, 711 (1974); *State v. Buhrman*, 1997 Ohio App. LEXIS 4093, \*20 (2d Dist. Sept. 12, 1997) ("Compulsory process enables a defendant to present his or her defense by means of subpoenaing witnesses on his or her behalf and by requiring subpoenaed witnesses to produce books, papers, documents, or other evidence."); *State v. Hsie*, 303 N.E.2d 89 (3d Dist. 1973), paragraph one of syllabus ("Where a witness fails to obey a subpoena duces tecum and the defendant fails to raise the matter of enforcement of the subpoena or to request the trial court to enforce contempt actions against the witness during trial, defendant thereby waives his right to compulsory process.").  Thus, the defendant's right to issue a subpoena duces tecum falls under the defendant's right to compulsory process to produce witnesses on his behalf, as authorized through Section 10, an express exception to the victim's right to refuse discovery under Section 10a(A)(6).

{¶ 9}  The victim has not demonstrated the applicability of the Section 10a(A)(6) in light of the express exception for the defendant's right to, in part,

compulsory process arising under Section 10 of the Ohio Constitution. "Under Section 10a(A)(6), a crime victim has a constitutional privilege to refuse a discovery request made by the accused," but that qualified privilege is "subject to a trial court's determination that Article I, Section 10 of the Ohio Constitution overrides the victim's privilege and authorizes the discovery." *State ex rel. Thomas v. McGinty*, 2020-Ohio-5452, ¶ 45. Section 10a does not authorize the victim to refuse the subpoena enforced by the trial court in this case through the denial of the motion to quash. *See* R.C. 2930.072. The victim's right to refuse discovery is limited by the rights authorized to the defendant that include compulsory process. Because the victim has not demonstrated that McFarland's right to issue the subpoena is not grounded in Section 10, the trial court did not err in denying her motion to quash the subpoena solely on the basis of Section 10a(A)(6). In this respect, our holding is expressly limited by the arguments presented, in which the victim has not demonstrated, let alone argued, that McFarland's right to compulsory process is not an exception to her asserted privilege under Section 10a(A)(6).[1] *See also* R.C.

---

[1] The divided panel's conclusion in *State v. Counts*, 2022-Ohio-3666 (8th Dist.), is acknowledged, but we decline to adopt any of the reasonings proffered by the three panel members, none of whom agreed on any dispositive issue. The lead opinion reversed the decision granting the defendant's discovery request but remanded the matter for a hearing to apply a balancing test as between the victim's right to refuse discovery and the defendant's right to pursue discovery; the separate concurring-in-judgment-only opinion would have reversed the trial court's granting of the defendant's discovery request because Marsy's Law "places no limits on a victim's right to refuse"; and the dissenting opinion would have affirmed the granting of defendant's discovery request.

2930.072 (victim does not have a right to refuse a court-ordered subpoena to testify).

{¶ 10} That does not end the inquiry because a victim can also challenge the breadth of the compelled production under Crim.R. 17(C), which contains the balancing test the dissent would create from whole cloth based on *State v. Counts*, 2022-Ohio-3666 (8th Dist.), a decision that does not have a majority resolution. Even if *Counts* had a majority, the issue in that case was a discovery request to view a victim's home, a request not demonstrated to be borne from compulsory process. That request is manifestly different than McFarland's issuance of a subpoena in advance of trial to compel the victim to appear with evidence, evidence that would not be obtainable at trial for the first time. Under Crim.R. 17(C), a defendant has the right to issue a subpoena to any person to produce books, papers, documents, or other objects designated in the subpoena relevant to his defense. The trial court, "upon motion made promptly and in any event made at or before the time specified in the subpoena for compliance therewith, may quash or modify the subpoena if compliance would be unreasonable or oppressive." Crim.R. 17(C). It is the witness's or victim's power to quash or limit a subpoena that introduces the balancing test the dissent seeks to implement, a test already in existence. *See State ex rel. Natl. Broadcasting Co. v. Court of Common Pleas*, 52 Ohio St.3d 104, 111 (1990) (noting that relator's assertion of the First Amendment is not a shield to a subpoena but if the subpoena is overly broad upon issuance, the relator has an adequate remedy to challenge that through Crim.R. 17(C)). No new test is needed to secure the victim's

rights under Crim.R. 17(C) to challenge a subpoena issued by the defendant as authorized under Section 10. There may well come a time, as in *Counts*, when a victim's right to refuse discovery impacts a defendant's general due-process rights, but this is not that case.

{¶ 11} Although McFarland is seeking certain information likely contained on the victim's electronic devices, the subpoena requested the devices or mirror images of them, tacitly acknowledging that the scope of the original subpoena was inherently unreasonable or oppressive under Crim.R. 17(C). The trial court's decision denying a motion to quash a subpoena and compel production of documents or objects is reviewed for an abuse of discretion, but in this case, the decision was in part based on McFarland's concession. *State v. Kopniske*, 2023-Ohio-2489, ¶ 5 (8th Dist.), citing *Parma v. Schoonover*, 2014-Ohio-400, ¶ 8 (8th Dist.). "A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority" or commits legal error. *Palmieri v. Palmieri*, 2024-Ohio-2720, ¶ 13 (10th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 20, 35. The Ohio Supreme Court adopted the four-part test a motion to quash filed under Crim.R. 17(C) as announced in *Nixon*, 418 U.S. at 683. *In re Subpoena Duces Tecum Served upon Attorney Potts*, 2003-Ohio-5234, paragraph one of the syllabus. Under that test, the proponent of the subpoena must demonstrate: (1) that the documents are relevant; (2) that the documents are not otherwise reasonably obtainable by due diligence; (3) that the proponent cannot properly prepare for trial without production and inspection of

the documents, and (4) that the subpoena is made in good faith. *Potts* at paragraph one of the syllabus. The trial court's "determination of whether a subpoena is unreasonable or oppressive is separate from its decision to conduct an in-camera inspection of documents that the trial court ultimately orders to be filed." *Id.* at ¶ 14.

{¶ 12} At the hearing on the victim's motion, McFarland's counsel explained that the imaging of the victim's smartphone and other devices from where the documentary evidence was created, would reveal the metadata attached to the videos, screenshots, photographs, text messages, or call information the victim turned over to the State for discovery and investigative purposes. "Metadata is an item within many paper and electronic documents, defined as '[s]econdary data that organize, manage, and facilitate the use and understanding of primary data.'" *Parks v. Webb*, 2018-Ohio-1578, ¶ 13 (Ct. of Cl.), quoting *Black's Law Dictionary* (9th Ed. 2009). "Examples include . . . author/date/version/GPS information in an electronic document or image" that is automatically embedded in document files. The victim's personal devices were made relevant to this criminal prosecution based on her willing submission of the evidence generated or stored on those devices related to her telephone number to the State during the investigation of the alleged criminal wrongdoing. That alone satisfies the *Nixon* test.

{¶ 13} The victim does not claim otherwise in this appeal, and in fact, concedes in her appellate briefing that McFarland could "properly prepare for trial without taking possession of all" personal devices related to the victim's telephone number by issuing "a subpoena asking specifically for production of call logs and

video logs directly from her phone that were created specifically [on] the date of the alleged attack." The victim also conceded that the metadata was relevant and any subpoena should have been limited to obtaining copies of the original files produced by the victim. Appellant Brief at p. 8-9. In this respect, the victim's appellate argument aligns with the scope of the request McFarland announced at oral argument.

{¶ 14} Instead of offering those concessions in support of the motion to quash, the victim largely presented the trial court a binary choice: either grant the motion to quash in its entirety based on the victim's constitutional right to refuse discovery or deny that motion based on the accused's constitutional right to compulsory process, which supersedes the victim's right to refuse discovery under Section 10a(A)(6). Because the victim's right to refuse discovery is subordinate to the defendant's right to compulsory process to obtain evidence relevant to his defense, it cannot be concluded that the trial court erred by denying the victim's motion. Further, because McFarland identified a narrow class of electronic evidence relevant to his defense, the trial court did not err in considering the *Nixon* factors at the hearing conducted. The decision denying the motion to quash is therefore affirmed; the trial court's decision to deny was based on the arguments presented by the victim claiming her right to refuse discovery, which is not applicable based on McFarland's assertion of the right to compulsory process arising under Section 10.

{¶ 15} Notwithstanding, compelling the victim, or any witness, to produce electronic devices or full system images directly to the defendant to conduct a

search of those devices invites a fishing expedition when only a subset of information from the devices has been identified as relevant. On this point, *Kriwinsky*, 2024-Ohio-2690, is instructive. In that case, the panel affirmed the procedure in which the State took possession of the full file imaging of the subpoenaed devices and extracted the relevant information to be produced to the defendant while preserving the integrity of the original file information. *Id.* The State essentially acted as the gatekeeper to ensure that all relevant evidence sought was produced to the defendant, which simultaneously limited the privacy concerns. Any disputes thereafter could then be mediated through in camera inspection by the trial court based on specific issues arising from the discovery process.

{¶ 16} In this case, McFarland identified particular information being sought, the original files, including the metadata, of the videos, photographs, or other user-generated evidence the victim provided to the State along with all evidence relating to any call or text logs surrounding the date of the alleged assault. The State is more than capable of retrieving and preserving that information directly from the victim's devices through a full file extraction or imaging of the devices and then producing the requested evidence to McFarland. *See generally Kriwinksy*; *see also* R.C. 2930.11 (returning or retaining a victim's property).

{¶ 17} Because this issue is limited to the evidence the victim already produced to the State, there are no issues with privilege. In camera review is necessary.

{¶ 18} In light of McFarland's narrowing of the subpoena request at the hearing, the scope of the subpoena should have been modified or an order compelling the limited production issued based on the oral modifications. To that end, the original order is affirmed but modified to reflect the narrowed subpoena request. The matter is remanded with instructions for the victim to produce any-and-all devices related to her telephone number as specified in the subpoena to the State for the purposes of conducting a full file extraction. The State shall then produce copies of the original files, if any, including all associated metadata, related to the videos, screenshots, photographs, or other files the victim turned over to the State during the investigation and for production of call logs and video logs stored on those devices that were created specifically on the date of the alleged attack.

{¶ 19} Affirmed, modified, and remanded for further proceedings.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EMANUELLA D. GROVES, J., CONCURS;
MICHELLE J. SHEEHAN, A.J., DISSENTS (WITH SEPARATE OPINION)


MICHELLE J. SHEEHAN, A.J., DISSENTING:

{¶ 20} Respectfully, I dissent.

{¶ 21} I agree with the majority that a victim's constitutional right to refuse discovery is not absolute and is subject to an accused's rights set forth in Ohio Const. art. I, § 10. *State v. McGinty,* 2020-Ohio-5452, at ¶ 28 (recognizing that "a victim's rights under Section 10a(A)(6) are not absolute"). But I disagree that a victim's right "to refuse to comply with a subpoena duces tecum is expressly subordinate to the rights of the accused to compel witnesses to produce evidence." Majority at ¶ 5. "Although a defendant is entitled to the constitutional trial rights of Due Process, counsel, and a fair trial as guaranteed under both the state and federal constitution, "'[t]here is no general constitutional right to discovery in a criminal case * * *.'''" *State v. Counts,* 2022-Ohio-3666, ¶ 24 (8th Dist.), quoting *State v. Widmer,* 2013-Ohio-62, ¶ 31 (12th Dist.), quoting *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977). Nor does Ohio Const. art. I, § 10 independently create a constitutional right to subpoena documents from a third-party. *See id.* at ¶ 38.

{¶ 22} The plain language of Article 1, Section 10 of the Ohio Constitution specifically provides that an "accused shall be allowed . . . to have compulsory process *to procure the attendance of witnesses in his behalf . . . .*" (Emphasis added.) It does not provide an independent constitutional right of an accused to issue subpoenas for documentary evidence to a third party. Rather, the authority for either party to issue subpoenas to procure documentary evidence flows from Crim.R. 17(C). The majority's interpretation of the Compulsory Process Clause adds words into the plain language of the Ohio Constitution.

{¶ 23} In support of its interpretation of the Compulsory Process Clause in the Ohio Constitution, the majority directs us to cases in which the United States Supreme Court has interpreted the Compulsory Process Clause in the Sixth Amendment to the Federal Constitution to include the defendant's right to secure papers material to his or her defense. But "the Ohio Constitution is a document of independent force." *State v. Mole,* 2016-Ohio-5124, ¶ 14, citing *Arnold v. Cleveland,* 67 Ohio St.3d 35, 42 (1993).

{¶ 24} Here, the Ohio Supreme Court has never interpreted the Compulsory Process Clause in Art. 1, Section 10 to include a constitutional right to subpoena documents. Rather, the voters amended the Ohio Constitution to grant victims the right to refuse discovery by an accused, except as provided in Art.1, Section 10 of the Ohio Constitution. To interpret Art. 1, Section 10 to provide an accused a constitutional right to compel discovery from a victim eviscerates a victim's constitutional right to refuse discovery.

{¶ 25} Rather, I reiterate what I held in *Counts,* that "where a trial court is moved to order a victim to produce discovery, other than a deposition, the trial court should conduct a balancing test to determine whether the victim's right to refuse a discovery request is outweighed by a criminal defendant's rights." *Counts* at ¶ 29. The test must balance the importance of the victim's right to refuse discovery with the accused's right to due process of law, effective assistance of counsel, and a fair trial. *See id.* at ¶ 39. At a minimum, the accused must "articulate a specific need necessitating" the materials sought to "vindicate [the accused's] right to due process, right to counsel, or right to fair trial." *Id.* at ¶ 40.

{¶ 26} Here, I disagree with the majority's determination that the victim's right to refuse discovery was inapplicable "based on McFarland's assertion of the right to compulsory process arising under Section 10." Majority at ¶ 14.

{¶ 27} Nonetheless, I agree with the majority's conclusion that "compelling the victim, or any witness, to produce electronic devices or full system images directly to the defendant to conduct a search of those devices invites a fishing expedition when only a subset of information from those devices has been identified as relevant." Majority at ¶ 15. As such, I agree this case should be remanded to modify the scope of the subpoena and consider an in camera review prior to production of documents to ensure the accused and victim's constitutional rights are protected. *State v Hughes*, 2019-Ohio-1000 ¶ 39 (8th Dist.) (Sheehan, J., concurring in judgment only).